## Case No. 11,128.

### PICO et al. v. UNITED STATES.

[Hoff. Land Cas. 142.] 1

District Court, D. California. June Term, 1856.

MEXICAN LAND GRANTS—FREMONT'S CASE.

Entitled to confirmation under the ruling of the supreme court in Fremont's Case [17 How. (58 U. S.) 542].

Claim for eight leagues of land in San Joaquin county, rejected by the board, and appealed by claimants [Antonio Maria Pico and others, claiming the Rancho El Pescadero].

Lockwood, Tyler & Wallace, for appellants.

William Blanding, U. S. Atty., for appellees.

HOFFMAN, District Judge. The claim in this case is founded on a grant issued by Governor Micheltorena, bearing date the twenty-eighth day of November, 1843. The expediente is produced from the archives, and the original grant delivered to the party interested—the authenticity of which is duly proved. The claim was, however, rejected by the board, on the ground that the conditions of the grant had not been performed, and, that no legal excuse for nonperformance had been offered. This decision was rendered before the Case of Fremont was determined by the supreme court. In the statement of the case filed by the counsel for the appellants no argument is offered on the points involved in the case, the expectation being confidently entertained that the rules laid down in Fremont v. U. S. [17 How. (58 U. S.) 542], would govern the case. On the part of the United States no argument is submitted, the court being merely referred to the objections urged in similar cases.

It is to be regretted that the point involved in this case was not debated by counsel, and that the court is obliged to arrive at a conclusion unassisted by arguments at the bar.

It is not pretended that the grantee ever complied, during the existence of the former

1 [Reported by Numa Hubert, Esq., and here reprinted by permission.]

19FED.CAS.—38

government, with the conditions of the grant. By the testimony of A. Suñol it appears that "soon after Pico received his grant he prepared to remove his cattle on his rancho, but the Indians became hostile about this time and murdered Gulnac's mayor domo on the other side of the river, and prevented Pico from settling on his land. From this time until 1848 and 1849 the Indians continued hostile, and robbed the ranchos down to the valley of San José. In 1847, troops were sent against them, but they continued their depredations until after the discovery of gold in 1848."

The conditions attached to grants in California were clearly conditions subsequent, and by the decision of the supreme court in the case of Fremont v. U. S. [supra], it is established that the grant of the governor, although unconfirmed by the departmental assembly, "vested in the grantee a present and immediate interest." It is true that the grant in that case alluded to the meritorious services of the grantee; but independently of the fact that the governors do not seem to have been authorized by the colonization laws to recompense such services by grants of land, and could at most only consider them as entitling the applicant to a preference over other petitioners, it is clear that the grants being in the same terms must receive the same construction, whatever consideration may have moved the governor to make them. The law under which he acted was intended to secure the settlement of the country by providing for the distribution of the public land among colonists and settlers. To such alone the governor was authorized to grant, and we accordingly find that in almost all cases conditions were annexed to the grant requiring the occupation and cultivation of the ceded land. Under our system the same result is attained by withholding the patent or final title until after the person who has entered the land has effected a permanent settlement upon it. Under the Mexican law, however, a full title issued in the first instance, but conditions were attached to it providing for a forfeiture in case the grantee, by omitting to occupy and settle upon his land. defeated the policy of the government, and failed to furnish what was the sole consideration of the grant. The grants, then, passed a present and immediate interest to the grantee, subject, however, to conditions subsequent; and such was their effect not only when the departmental assembly had confirmed, but even, as decided in the Case of Fremont, without such confirmation.

From this general statement it is, we think, apparent that the principles established in that case apply to all colonization grants made under the regulations of 1828, and cannot be restricted to those alone in which the meritorious services of the grantee may happen to be alluded to in the grant. This grant, then, like that to Alvarado in the case referred to, having vested in the grantee a present and immediate interest, the inquiry, as in that case, is "whether there has been any unreasonable

delay or want of effort on the part of the grantee to fulfill its conditions, and whether there is room for the presumption that the party had abandoned his claim before the Mexican power ceased to exist and is now endeavoring to resume it from its enhanced value." The facts in the Case of Fremont, in which it was held that no unreasonable delay had occurred, and that no such presumption arose, were established in a manner much more satisfactory than those relied on in this case. It may not be "very clear," as in that case, that during the continuance of the Mexican power it was impossible to have made a survey or built a house on the land, but the fact exists in this case, as in that, that no one else proposed to settle on it or denounced it for nonfulfillment of the conditions. The testimony of Suñol, though less full and satisfactory than could be wished, nevertheless shows that the obstacles to the settlement were nearly identical with those which prevented Alvarado from complying with the conditions of his grant. The grant to Pico is dated November, 1843, while that to Alvarado was issued in February, 1844 —only three months afterwards. The general condition of the country, and the political disturbances, which prevented a settlement in the one case must have interposed obstacles equally insurmountable in the other. But the inquiry is not whether the grantee could, by possibility, have effected a settlement on his land, but whether his delay has been unreasonable, and so unreasonable as to furnish a presumption that he abandoned his claim, and that he is now fraudulently attempting to resume it. Under the evidence we feel constrained to say, that his delay is not only susceptible of an explanation consistent with the absence of any intention on his part to abandon his claim, but that it seems to have been caused by circumstances over which he had no control, and which probably rendered it unavoidable.

It may be urged that in this case the governor did not, as in the case of Alvarado, dispense with the diseño or plan which usually accompanied the petition; and that the presumption does not arise in this case, as in that, that the governor, by "officially admitting that the land was situated in such a wilderness and bordered by such dangerous neighbors as that no plan could be prepared," impliedly recognized the impracticability of effecting a settlement within the time. There is some force, perhaps, in this suggestion. But it is to be remembered that the governor expressly imposed upon Alvarado the condition of making his settlement within the year; and if his dispensing with the diseño might be considered as a recognition of the fact that the condition of the country might occasion delays, and that such delays would not be deemed unreasonable, the circumstance that he, notwithstanding, insisted in the second condition on the settlement within the usual time, in some degree at least impairs the force of the argument. The insertion of the condition is not, however, so conclusive on this point as it might appear; for the dispensing with the diseño was an unusual and exceptional indulgence of the governor, in granting which he exercised a discretion after his attention had been attracted to the subject, while the insertion of the usual conditions in the grant was probably the work of some clerk, who drew up the paper in the usual form, and without reference to any peculiar circumstances attending it. The insertion of the conditions. could, moreover, under the Mexican law, have naturally been but little regarded by the grantee, for he knew that so long as he was unable to effect a settlement no one else would be, and, as observed by the supreme court, that the grant would not be forfeited unless some other person desired and was ready to occupy the land. I do not perceive, therefore, that the fact that the governor in the Case of Fremont dispensed with the diseño, while in this case it was duly submitted with the petition, furnishes ground for a broad distinction between that case and this.

The important and the sole question is, as propounded by the supreme court in the case so often referred to, "whether any thing done or omitted to be done by the grantee during the existence of the Mexican government in California, forfeited the interest he had acquired, and revested it in the government." Such forfeiture could only have been incurred by unreasonable delay or want of effort on his part to fulfill the conditions; and such as to raise the presumption that he had abandoned his claim. It being shown in this case that the delay arose from obstacles which may be regarded as insuperable, that it was not only not unreasonable, but probably unavoidable, no presumption of abandonment can arise; and the title not having been "forfeited and revested in the government, remained, at the time the sovereignty passed to the United States, vested in the grantee, and the United States are bound in good faith to uphold and protect it." [Fremont v. U. S.] 17 How. [58 U. S.] 557.

A decree of confirmation must therefore be entered.